**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**WINSTON-SALEM DIVISION**

| | |
|---|---|
| Keith Van Allen, *on behalf of himself and all others similarly situated*, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT – CLASS ACTION** |
| Novant Health, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Keith Van Allen ("Plaintiff") brings this Class Action Complaint against Novant Health, Inc. ("Defendant"), in his individual capacity and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions, his counsels' investigation, and upon information and belief as to all other matters, as follows:

1.     Plaintiff brings this class action against Defendant. Plaintiff alleges that Defendant willfully disclosed Plaintiff's and Class Members' confidential personally identifiable information ("PII") and confidential personal health information ("PHI") (collectively referred to as "Private Information").

2.     Plaintiff alleges that Defendant purposely and knowingly disclosed the following Private Information: demographic information such as email address, phone number, computer IP address, and contact information entered into Emergency Contacts or Advanced Care Planning; and personal health information such as medical appointment type and date, physician selected, button/menu selections, and/or content typed into free text boxes. [1]

---

[1] https://www.novanthealth.org/home/about-us/newsroom/press-

1

3.      Defendant admits that Plaintiff's and Class Members' social security numbers and financial information may have also been disclosed to Facebook, its parent company (Meta), and third parties without the necessary notice to and consent of Plaintiff and Class Members.

4.      Defendant is a three-state integrated network of physician clinics, outpatient centers and hospitals. Its network consists of more than 1,800 physicians and 35,000 employees at more than 800 locations, including 15 medical centers and hundreds of outpatient facilities and physician clinics. [2]

5.      Headquartered in Winston-Salem, North Carolina, Defendant advertises that it is committed to making healthcare remarkable for patients and communities, serving more than 5 million patients annually.

6.      In May 2020, Defendant launched a promotional and marketing campaign to connect more patients to Defendant's MyChart patient portal with the goal of improving access to care through virtual visits and provide increased accessibility to counter the limitations of in person care. [3]

7.      Defendant's marketing campaign utilized tracking pixels from Facebook and its parent company (Meta) to examine the success of its marketing efforts on Facebook. A pixel is a piece of code that "tracks the people and type of actions they take." [4]

8.      Pixels are routinely used to target specific customers by utilizing the data gathered through the Pixel to build profiles for the purposes of retargeting and future marketing. Upon

---

releases/newsid33987/2672/novant-health-notifies-patients-of-potential-data-privacy-incident-.aspx (last visited August 21, 2022).
[2] https://www.novanthealth.org/Portals/92/novant_health/documents/media/2022_Media_kits/2022_Novant%20Health%20Fact%20Sheet_final.pdf (last visited: August 21, 2022).
[3] MyChart | Novant Health
[4] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.

2

information and belief, Defendant utilized the Pixel data to improve and save costs on its marketing campaign.

9. With respect to Defendant's website and marketing efforts, when Plaintiff or Class Members accessed a website that utilized the Facebook pixel, the pixel would direct Plaintiff' and Class Members' browser to send information to Facebook and its parent company (Meta).

10. For example, when Plaintiff or a Class Member accessed Defendant's website hosting the tracking pixel, the Facebook software directed Plaintiff's or Class Members' browser to send a message to Facebook's servers. The information sent to Facebook by Defendant included the Private Information that Plaintiff and Class Members submitted to Defendant's website, including but not limited to, the type and date of a medical appointment and physician. Such Private Information would allow a third party to know that a specific patient was seeking confidential medical care. This type of disclosure could also allow a third party to reasonably infer that a specific patient was treating for a specific type of medical condition such as cancer or pregnancy.

11. Defendant's tracking pixel was misconfigured and improperly utilized allowing the Private Information that Plaintiff and Class Members submitted to Defendant to be unlawfully disclosed to Facebook and its parent company (Meta).

12. It is unknown without discovery whether the Private Information was further disseminated to additional third parties for the purposes of building profiles and retargeting; however, there have been at least one report from a putative class member experiencing an increase in targeted marketing.

13. Defendant did not discover that the tracking pixel was misconfigured and unlawfully disseminating Private Information until June 17, 2022. Even though Defendant learned

3

of the unlawful disclosure in June, Defendant did not actually notify Plaintiff and Class Members until August 12, 2022.

14.     Plaintiff provided Private Information to Defendant in order to receive services rendered and on the reasonable expectation that Defendant would protect their Private Information.

15.     The number of patients affected by Defendant's unlawful practices is over 1,300,000.

16.     Defendant admits that it disclosed Plaintiff's and Class Members' Private Information, including, but not limited to, demographic information such as email address, phone number, computer IP address, and contact information entered into Emergency Contacts or Advanced Care Planning; and information such as appointment type and date, physician selected, button/menu selections, and/or content typed into free text boxes. [5]

17.     As a result of the Data Breach, Plaintiff and over one million Class Members suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, diminution of value of the Private Information, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack and the substantial and imminent risk of identity theft. Furthermore, Defendant was unjustly enriched by the benefit of the data being conferred and utilized in its marketing efforts.

18.     By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized disclosure.

19.     The exposed Private Information of Plaintiff and Class Members can—and likely

---

[5] https://www.novanthealth.org/home/about-us/newsroom/press-releases/newsid33987/2672/novant-health-notifies-patients-of-potential-data-privacy-incident-.aspx (last visited August 21, 2022).

will—be further disseminated to additional third parties utilizing the data for retargeting. Furthermore, third parties can often offer for sale the unencrypted, unredacted Private Information to criminals on the dark web.

20.     Without discovery, Plaintiffs cannot rule out that his Social Security Number was compromised, but based on Defendant's statements, he faces an increased risk of identity theft warranting reasonable mitigation steps to reduce and protect himself against that risk.

21.     This Private Information was compromised due to Defendant's intentional, negligent and/or careless acts, omissions, and the failure to protect the Private Information of Plaintiff and Class Members. In addition to Defendant's failure to prevent the Data Breach, after discovering the breach, Defendant waited several months to report it to government agencies and affected individuals.

22.     As a result of this delayed response, Plaintiff and Class Members were not timely informed that their Private Information had been compromised and disclosed during a marketing campaign involving the worlds' largest social media platform known for its extensive profile building and targeted ads.

23.     Furthermore, given the type of information involved, which may include the Social Security Numbers, Plaintiff and putative Class Members are and will continue to be at an increased risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for the foreseeable future.

24.     Plaintiff bring this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately restrict the disclosure of the Private Information of Plaintiff and Class Members; (ii) obtain the consent of Plaintiff and Class Members to disclose their PII and PHI to Facebook or others; (iii) to prevent the use of Plaintiff's

and Class Members' PII and PHI by third parties for marketing purposes; and (iv) to design their patient facing website to maintain the confidentiality and integrity of patient PII and PHI. Defendant's conduct was willful and intentional and violates federal and state statutes.

25.     Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) lost or diminished value of Private Information; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, and (iv) the continued and substantially increased risk to their Private Information.

26.     Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate measures to prevent the unlawful disclosure of their PII and PHI.

27.     Plaintiff's and Class Members' PII and PHI was maintained as confidential, and Defendant failed to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies and procedures regarding the sharing of PII and PHI.

28.     As the result, the PII and PHI of Plaintiff and Class Members was compromised through disclosure to an unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains confidential, and they should be entitled to injunctive and other equitable relief.

29.     Moreover, Defendant's negligence has affected over one million Class Members all across the country. Indeed, according to its report submitted the United States Department of

6

Health and Human Services, Defendant admits that the Private Information of at least 1,362,296 individuals were disclosed to Facebook without their knowledge or consent. [6]

**PARTIES**

30.     Plaintiff, Keith Van Allen, is a natural person and citizen of North Carolina, residing in Charlotte, North Carolina, (Mecklenburg County) where he intends to remain. According to a Notice he received from Defendant, Mr. Allen's Private Information was disclosed to Facebook without his knowledge or consent.

31.     Defendant, Novant Health, Inc., is a North Carolina company with its principal place of business at 2085 Frontis Plaza Blvd., Winston-Salem, North Carolina 27103.

**JURISDICITON & VENUE**

32.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, is a citizen of a state different from Defendant.

33.     This Court has personal jurisdiction over Defendant because its principal place of business is in this District and the acts and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

34.     Venue is proper under 18 U.S.C § 1391(b)(1) because Defendant's principal place of business is in this District.

---

[6] https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited: Aug. 22, 2022).

## FACTUAL ALLEGATION

### *Defendant Disclosed Plaintiff's and Class Members' Private Information*

35.     In May 2020, Defendant launched a campaign to connect Plaintiff and Class Members to Defendant's digital healthcare platform, with the goal of improving access to care through virtual visits and provide increased accessibility. [7]

36.     Defendant utilized Facebook advertisements and a Facebook tracking pixel placed on Defendant's website to assist Defendant with its goal of encouraging adoption of its online healthcare platform. [8] A tracking pixel is a piece of code that Defendant commonly used to measure activity and experiences on their website. [9]

37.     Through seeking and using Defendant's services as a medical provider, and utilizing the website services, Plaintiff's and Class Members' Private Information was disclosed and disseminated to Facebook, and potentially to other third parties, via the Facebook Pixel that Defendant placed on its website.

38.     Plaintiff and Class Members did not intend or have any reason to suspect the Private Information would be shared with Facebook.

39.     Defendant did not disclose to or warn Plaintiff or Class Members that Defendant used Plaintiff' and Class Members' website submissions for Facebook's marketing purposes.

40.     Defendant tracked Plaintiff' and Class Members' Private Information via the tracking pixel from May 2020 to June 17, 2022.

41.     Plaintiff and Class Members never consented, agreed, authorized, or otherwise permitted Defendant to disclose their Private Information.

---

[7] *See supra* Fn. 1.
[8] *Id*.
[9] *Id*.

Case 1:22-cv-00709-WO-JEP   Document 1   Filed 08/26/22   Page 8 of 30

42.     By law, Plaintiff and Class Members are entitled to privacy in their protected health information and confidential communications. Defendant violated Plaintiff's right to privacy.

43.     Specifically, Defendant deprived Plaintiff and Class Members of their privacy rights when it: (1) implemented a system that surreptitiously tracked, recorded, and disclosed Plaintiff's and other online patients' confidential communications and Private Information; (2) disclosed patients' protected information to Facebook—an unauthorized third-party; and (3) undertook this pattern of conduct without notifying Plaintiff or Class Members and without obtaining their express written consent.

***Facebook's Platform and its Business Tools***

44.     Facebook describes itself as a "real identity platform," [10] meaning users are allowed only one account and must share "the name they go by in everyday life." [11]  To that end, when creating an account, users must provide their first and last name, along with their birthday and gender.[12]

45.     In 2021, Facebook generated $117 billion in revenue. [13]  Roughly 97% of that came from selling advertising space. [14]

46.     Facebook sells advertising space by highlighting its ability to target users. [15] Facebook can target users so effectively because it surveils user activity both on and off its site. [16]

---

[10] Sam Schechner and Jeff Horwitz, *How Many Users Does Facebook Have? The Company Struggles to Figure It Out*, WALL. ST. J. (Oct. 21, 2021).
[11] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity.
[12] FACEBOOK, SIGN UP, https://www.facebook.com/
[13] FACEBOOK, META REPORTS FOURTH QUARTER AND FULL YEAR 2021 RESULTS, https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter-and-Full-Year-2021-Results/default.aspx
[14] *Id.*
[15] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/205029060038706.
[16] FACEBOOK, ABOUT FACEBOOK PIXEL,

This allows Facebook to make inferences about users beyond what they explicitly disclose, like their "interests," "behavior," and "connections." [17] Facebook compiles this information into a generalized dataset called "Core Audiences," which advertisers use to apply highly specific filters and parameters for their targeted advertisements. [18]

47. Advertisers can also build "Custom Audiences." [19] Custom Audiences enable advertisers to reach "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website." [20] With Custom Audiences, advertisers can target existing customers directly, and they can also build a "Lookalike Audiences," which "leverages information such as demographics, interests, and behavior from your source audience to find new people who share similar qualities." [21] Unlike Core Audiences, advertisers can build Custom Audiences and Lookalike Audiences only if they first supply Facebook with the underlying data. They can do so through two mechanisms: by manually uploading contact information for customers, or by utilizing Facebook's "Business Tools." [22]

48. As Facebook puts it, the Business Tools "help website owners and publishers, app developers and business partners, including advertisers and others, integrate with Facebook,

https://www.facebook.com/business/help/742478679120153?id=1205376682832142.

[17] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[18] FACEBOOK, EASIER, MORE EFFECTIVE WAYS TO REACH THE RIGHT PEOPLE ON FACEBOOK, https://www.facebook.com/business/news/Core-Audiences.

[19] FACEBOOK, ABOUT CUSTOM AUDIENCES, https://www.facebook.com/business/help/744354708981227?id=2469097953376494.

[20] FACEBOOK, AD TARGETING, HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting.

[21] Facebook, About Lookalike Audiences, https://www.facebook.com/business/help/164749007013531?id=401668390442328.

[22] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097953376494; Facebook, Create a Website Custom Audience, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494.

Case 1:22-cv-00709-WO-JEP   Document 1   Filed 08/26/22   Page 10 of 30

understand and measure their products and services, and better reach and serve people who might be interested in their products and services." [23]  Put more succinctly, Facebook's Business Tools are bits of code that advertisers can integrate into their website, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms.

49.     The Business Tools are automatically configured to capture certain data, like when a user visits a webpage, that webpage's Universal Resource Locator ("URL") and metadata, or when a user downloads a mobile application or makes a purchase. [24]  Facebook's Business Tools can also track other events. Facebook offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases. [25]  Advertisers can even create their own tracking parameters by building a "custom event." [26]

50.     One such Business Tool is the Facebook Tracking Pixel. Facebook offers this piece of code to advertisers, like Defendant, to integrate into their website. As the name implies, the Facebook Pixel "tracks the people and type of actions they take." [27]  When a user accesses a website hosting the Facebook Pixel, Facebook's software script surreptitiously directs the user's browser to send a separate message to Facebook's servers. This second, secret transmission

---

[23] FACEBOOK, THE FACEBOOK BUSINESS TOOLS, https://www.facebook.com/help/331509497253087.
[24] *See* FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; *see also* FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142; FACEBOOK, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.
[25] FACEBOOK, SPECIFICATIONS FOR FACEBOOK PIXEL STANDARD EVENTS, https://www.facebook.com/business/help/402791146561655?id=1205376682832142.
[26] FACEBOOK, ABOUT STANDARD AND CUSTOM WEBSITE EVENTS, https://www.facebook.com/business/help/964258670337005?id=1205376682832142; *see also* FACEBOOK, APP EVENTS API, https://developers.facebook.com/docs/marketing-api/app-event-api/.
[27] FACEBOOK, RETARGETING, https://www.facebook.com/business/goals/retargeting.

contains the original GET request sent to the host website, along with additional data that the Facebook Pixel is configured to collect. This transmission is initiated by Facebook code and concurrent with the communications with the host website. Two sets of code are thus automatically run as part of the browser's attempt to load and read Defendant's websites—Defendant's own code, and Facebook's embedded code.

51.     After intercepting and collecting this information, Facebook processes it, analyzes it, and assimilates it into datasets like Core Audiences and Custom Audiences. If the website visitor is also a Facebook user, Facebook will associate the information that it collects from the visitor with a Facebook ID that identifies their name and Facebook profile, i.e., their real-world identity.

***Defendant's Privacy Policy*** [28]

52.     Defendant's privacy policies represents to Plaintiff and Class Members that Defendant will keep Private Information and they will only disclose Private Information under certain circumstances.

53.     Defendant publishes a Patient Bill of Rights which tells patients that they have the right to "personal privacy" and "[p]rivacy, confidentiality and access to your medical information." Defendant also requires that patients "[s]hare as much information with us as possible about your health [and] medications."[29]

54.     Defendant's separate Notices of Privacy Practices[30] assure Plaintiff and Class Members, "[w]e must protect the privacy of health information about you that can identify you."

55.     Defendant's Notice of Privacy Practices explains Defendant's legal duties with

---

[28]https://www.novanthealth.org/Portals/92/Assets/Documents/Corporate/PDFs/Novant%20Health%20Notice%20of%20Privacy%20Policies%20for%20North%20Carolina.pdf (last visited: August 22, 2022).
[29] Patient Bill of Rights | Novant Health
[30] *Id*.

respect to Private Information and the exceptions for when Defendant can lawfully use and disclose Plaintiff's and Class Members' Private Information in the following ways:

- To provide healthcare treatment to you;
- To obtain payment for services;
- For healthcare operations;
- To raise money for our organization;
- To remind you about appointments;
- To tell you about treatment options;
- To our business associates;
- When it is required by law;
- For public health activities;
- For health oversight activities;
- For a legal proceeding;
- For law enforcement purposes;
- To a medical examiner or funeral director;
- For organ, eye, or tissue donation purposes;
- For medical research;
- To avoid a serious threat to health or safety;
- For specialized government functions; and
- For law enforcement custodial situations.

56. Defendant's privacy policy does not permit Defendant to use and disclose Plaintiff's and Class Members' Private Information for marketing purposes.

57. Defendant also promises patients that, "In any situation other than those listed

13

above, we may ask for your written authorization before we use or disclose your PHI."

58.     Defendant also publishes a Patient Privacy HIPAA notice that specifically represents:

> We can only release your personal health information to those directly involved in providing your care; however, you have the right to grant access to your personal medical or billing information to other individuals or organizations of your choice. If you choose to do so, we require a written authorization.[31]

59.     Defendant violated its own privacy policy by unlawfully disclosing Plaintiff's and Class Members' Private Information to Facebook, Meta, and third parties without adequately disclosing that it shared Private Information with third parties and without acquiring the specific patients' consent or authorization to share the Private Information.

***Plaintiff Keith Van Allen's Experiences***

60.     Plaintiff Keith Van Allen entrusted his Private Information to Defendant. As a condition of receiving Defendant's services, Plaintiff disclosed his Private Information to Defendant.

61.     Plaintiff accessed Defendant's website to receive healthcare services from Defendant and at Defendant's direction.

62.     Plaintiff reasonably expected that his communications with Defendant via the website were confidential, solely between himself and Defendant, and that such communications would not be transmitted to or intercepted by a third party.

63.     Plaintiff provided his Private Information to Defendant and trusted that the information would be safeguarded according to Defendant's policies and state and federal law.

64.     As described herein, Defendant worked along with Facebook and its parent

---

[31] https://www.novanthealth.org/home/patients--visitors/patient-bill-of-rights/patient-privacy-hipaa.aspx

14

company (Meta) to intercept Plaintiff's communications, including those that contained Private and confidential information. Defendant willfully facilitated these interceptions without Plaintiff's knowledge, consent, or express written authorization.

65.     Defendant transmitted to Facebook Plaintiff's email address, phone number, computer IP address, and contact information entered into Emergency Contacts or Advanced Care Planning; and information such as appointment type and date, physician selected, button/menu selections, and/or content typed into free text boxes.

66.     By doing so without Plaintiff's consent, Defendant breached Plaintiff's right to privacy and unlawfully disclosed Plaintiff's Private Information.

67.     Defendant did not inform Plaintiff that it had shared his Private Information with Facebook until on or around August 12, 2022.

68.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised in and as a result of Defendant's willful and intentional acts. Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result and has anxiety and increased concerns for the loss of his privacy.

69.     Plaintiff has a continuing interest in ensuring that Plaintiff's PII and PHI, which, upon information and belief, remain backed up in Defendant's possession, is protected, and safeguarded from future unauthorized disclosure.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated ("the Class") pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

15

71.     The Nationwide Class that Plaintiff seeks to represent is defined as follows:

All individuals residing in the United States whose Private Information was disclosed to a third party without authorization or consent, including all persons receiving notice about such disclosures from Defendant.

72.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

73.     Plaintiff reserves the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

74.     <u>Numerosity</u>, Fed R. Civ. P. 23(a)(1): The Nationwide Class members are so numerous that joinder of all members is impracticable. Upon information and belief, there are over one million individuals whose PII and PHI may have been improperly accessed by Facebook, and the Class is identifiable within Defendant's records.

75.     <u>Commonality</u>, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a.    Whether and to what extent Defendant had a duty to protect the PII and PHI of Plaintiff and Class Members;

b.    Whether Defendant had duties not to disclose the PII and PHI of Plaintiff and Class Members to unauthorized third parties;

c.    Whether Defendant violated its privacy policy by disclosing the PII and PHI of Plaintiff and Class Members to Facebook, Meta, and/or additional third parties.

d.    Whether Defendant adequately, promptly, and accurately informed Plaintiff and

16

Class Members that their PII and PHI would be disclosed to third parties;

e.  Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII and PHI had been compromised;

f.  Whether Defendant adequately addressed and fixed the practices which permitted the disclosure of patient PHI and PII;

g.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII and PHI of Plaintiff and Class Members;

h.  Whether Defendant violated the consumer protection statutes invoked herein;

i.  Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

j.  Whether Defendant knowingly made false representations as to it data security and /or privacy policy practices;

k.  Whether Defendant knowingly omitted material representations with respect to its data security and/or privacy policy practices; and

l.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Defendant's disclosure of their PII and PHI.

76.  <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiff' claims are typical of those of other Class Members because all had their PII and PHI compromised as a result of Defendant's incorporation of the Facebook Pixel, due to Defendant's misfeasance.

77.  <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that

17

is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

78.    Superiority and Manageability, Fed. R. Civ. P. 23(b)(3): Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

79.    Policies Generally Applicable to the Class, This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

80.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure

18

to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

81.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

82.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

83.     Unless a Class-wide injunction is issued, Defendant may continue in their failure to properly secure the Private Information of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the practices complained of herein, and Defendant may continue to act unlawfully as set forth in this Complaint.

84.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

85.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification

because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

    a.  Whether Defendant owed a legal duty to not disclose Plaintiff's and Class Members' Private Information;

    b.  Whether Defendant owed a legal duty to not disclose Plaintiff's and Class Members' Private Information with respect to Defendant's privacy policy;

    c.  Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

    d.  Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

    e.  Whether Defendant adequately and accurately informed Plaintiff and Class Members that their Private Information would be disclosed to third parties;

    f.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information disclosed to third parties;

    g.  Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

86.    Plaintiff reserves the right to amend or modify the Class definition as this case progresses.

87.    <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time,

based on information and belief, the Class consists of approximately 1,300,000 Class Members whose sensitive data was compromised by Defendant.

88.     <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.     Whether Defendant unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.     Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct; and

c.     Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

89.     <u>Typicality</u>. Plaintiff' claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised by Defendant's disclosure.

90.     <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions.

91.     <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

92.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

## COUNT I
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Putative Rule 23 Class)**

93.     Plaintiff re-allege and incorporate by reference all other paragraphs in the Complaint as if fully set forth herein.

94.     Plaintiff and Class Members had a legitimate expectation of privacy regarding their PII and PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

95.     Defendant owed a duty to Plaintiff and Class Member to keep their PII and PHI confidential.

96.     The unauthorized disclosure and/or acquisition by a third party of Plaintiff's and Class Members' PII and PHI is highly offensive to a reasonable person.

97.     Defendant's willful and intentional disclosure of Plaintiff's and Class Members' PII and PHI constitutes an intentional interference with Plaintiff's and the Class Members' interest in

solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

98.     Defendant's conduct constitutes an intentional physical or sensory intrusion on Plaintiff's and Class Members' privacy because Defendant facilitated Facebook's simultaneous eavesdropping and wiretapping of confidential communications.

99.     Defendant's failure to protect Plaintiff's and Class Members' Private Information acted with a knowing state of mind when it incorporated the Facebook Pixel into its website because it knew the functionality and purpose of the Facebook Pixel.

100.    Because Defendant intentionally and willfully incorporated the Facebook Pixel into its website and encouraged patients to use that website for healthcare purposes, Defendant had notice and knew that its practices would cause injury to Plaintiff and Class Members.

101.    As a proximate result of Defendant's acts and omissions, the private and sensitive PII and PHI of Plaintiff and the Class Members was disclosed to a third party without authorization, causing Plaintiff and the Class to suffer damages.

102.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII and PHI are still maintained by Defendant and still in the possession of Facebook and the wrongful disclosure of the information cannot be undone.

103.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not undo Defendant's disclosure of the information to Facebook who on information and belief continues to possess and utilize that information.

104.    Plaintiff, on behalf of himself and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class

23

Members' PII and PHI and to adhere to its statutory, common law, and contractual duties.

105.    Plaintiff, on behalf of himself and Class Members, seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, punitive damages, plus prejudgment interest, and costs.

## COUNT II
### Violation of North Carolina's Unfair and Deceptive Trade Practice Act
### N.C. Gen. Stat. § 75-1.1, *et seq*.
### (On behalf of Plaintiff and the Putative Class)

106.    Plaintiff repeats and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

107.    N.C. Gen. Stat. § 75-1.1. (the "NC UDTPA") declares unlawful "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

108.    Defendant's conduct was in and affecting commerce and constitutes an unfair or deceptive trade practice under the NC UDPTA.

109.    Specifically, Defendant's unlawful disclosure of Plaintiff's and Class Members' Private Information constitutes a per se violation of NC UDPTA.

110.    Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment and omission of material facts in connection with the sale and advertisement of their services in violation of the NC UDPTA: (i) unlawfully disclosing Plaintiff's and Class Members' Private Information to Facebook, Meta, and third parties; (ii) failing to disclose or omitting material facts to Plaintiff and Class Members regarding the disclosure of their Private Information to Facebook, Meta, and third parties; and (iii) failing to take proper action to ensure the proper pixel was configured to prevent unlawful disclosure of Plaintiff's and Class Members'

Private Information.

111. Defendant's actions also constitute deceptive and unfair acts or practices because Defendant knew it failed to disclose to Plaintiff and Class Members that their healthcare related communications via the website would be disclosed to Facebook, Meta, and third parties.

112. Defendant's actions also constitute deceptive and unfair acts or practices because Defendant intended that Plaintiff and Class Members rely on its deceptive and unfair acts and practices and the concealment and omission of material facts in connection with Defendant's offering of goods and services.

113. Specifically, Defendant was aware that Plaintiff and Class Members depended and relied upon it to keep their communications confidential and Defendant instead disclosed that information to Facebook.

114. In addition, Defendant's material failure to disclose that Defendant collects Plaintiff's and Class Members' Private Information for marketing purposes with Facebook constitutes an unfair act or practice prohibited by the NC UDPTA. Defendant's actions were immoral, unethical, and unscrupulous.

115. Plaintiff had reasonable expectations of privacy in his communications exchange with Defendants, including communications exchanged at www.novanthealth.org and on the log-in page for MyChart Portal.

116. Plaintiff's reasonable expectations of privacy in the communications exchanged with Defendant were further buttressed by Defendant's express promises in its Notice of Privacy Practices, Patient Bill of Rights and HIPAA Privacy notice.

117. Contrary to its duties as a medical provider and its express promises of confidentiality, Defendant deployed pixel code to disclose and transmit Plaintiff's personally

25

identifiable, non-public medical information, and the contents of his communications exchanged with Defendant to third parties, i.e., Facebook and Meta.

118.    Defendant's disclosures of Plaintiff's and Class Members' Private Information were made without their knowledge, consent, or authorization, and were unprivileged.

119.    The harm arising from a breach of provider-patient confidentiality includes erosion of the essential confidential relationship between the healthcare provider and the patient.

120.    Defendant willfully, knowingly, intentionally, and voluntarily engaged in the aforementioned acts when it incorporated the Facebook Pixel with knowledge of the Pixel's purpose and functionality.

121.    The harm described herein could not have been avoided by Plaintiff and Class Members through the exercise of ordinary diligence.

122.    As a result of Defendant's wrongful conduct, Plaintiff were injured in that they never would have provided their PII and PHI to Defendant, or purchased Defendant's services, had they known or been told that Defendant shared their confidential and sensitive Private Information with Facebook.

123.    As a direct and proximate result of Defendant's violations of the NC UDPTA, Plaintiff and Class Member have suffered harm, including financial losses related to the payments or services made to Defendant that Plaintiff and Class Members would not have made had they known of Defendant's disclosure of their PII and PHI to Facebook; lost control over the value of their PII and PHI; and other harm resulting from the unauthorized use or threat of unauthorized use of their PII and PHI, including for unwanted solicitations or marketing, entitling them to damages in an amount to be proven at trial.

124.    Pursuant to N.C. Gen. Stat. § 75-16, § 75.16.1, Plaintiff request damages, treble

26

damages, punitive damages, and attorneys' fees in addition to all other relief allowed by law.

### COUNT III
**Unjust Enrichment**
**(On behalf of Plaintiff and the Putative Class)**

125.    Plaintiff repeats and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

126.    Defendant benefits from Plaintiff and Class Members and unjustly retained those benefits at their expense.

127.    Plaintiff and Class Members conferred a benefit upon Defendant in the form of Private Information that Defendant collected from Plaintiff and Class Members, without authorization and proper compensation. Defendant has collected and used this information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation.

128.    Defendant unjustly retained those benefits at the expense of Plaintiff and Class Members because Defendant's conduct damaged Plaintiff and Class Members, all without providing any commensurate compensation to Plaintiff and Class Members.

129.    The benefits that Defendant derived from Plaintiff and Class Members rightly belong to Plaintiff and Class Members. It would be inequitably under unjust enrichment principles in North Carolina and every other state for Defendant to be permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

130.    Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

## COUNT IV
## Breach of Implied Contract
## (On behalf of Plaintiff and the Putative Class)

131.    Plaintiff repeats and re-allege each and every allegation contained in the Complaint as if fully set forth herein.

132.    When Plaintiff and Class Members provided their user data to Defendant in exchange for services, they entered an implied contract pursuant to which Defendant agreed to safeguard and not disclose their Private Information without consent.

133.    Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

134.    Plaintiff and Class Members would not have entrusted Defendant with their Private Information in the absence of an implied contract between them and Defendant obligating them not to disclose this Private Information without consent.

135.    Defendant breached these implied contracts by disclosing Plaintiff's and Class Members' Private Information to a third party, *i.e.*, Facebook.

136.    As a direct and proximate result of Defendant's breaches of these implied contracts, Plaintiff and Class Members sustained damages as alleged herein. Plaintiff and Class Members would not have used Defendant's services, or would have paid substantially for these services, had they known their Private Information would be disclosed.

137.    Plaintiff and Class Members are entitled to compensatory and consequential damages as a result of Defendant's breach of implied contract.

28

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, request judgment against Defendant and that the Court grant the following:

A.      For an Order certifying the Nationwide Class and appointing Plaintiff and their Counsel to represent such Class;

B.      For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members;

C.      For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members:

D.      For an award of damages, including, but not limited to, actual, consequential, punitive, and nominal damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demand that this matter be tried before a jury.

Case 1:22-cv-00709-WO-JEP   Document 1   Filed 08/26/22   Page 29 of 30

DATE: August 26, 2022                    Respectfully Submitted,

                                        */s/ Scott C. Harris*
                                        **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
                                        Scott C. Harris
                                        N.C. Bar No: 35328
                                        900 W. Morgan Street
                                        Raleigh, NC 27603
                                        Telephone: (919) 600-5003
                                        Facsimile: (919) 600-5035
                                        sharris@milberg.com

                                        Joseph M. Lyon*
                                        **The Lyon Law Firm, LLC**
                                        2754 Erie Ave.
                                        Cincinnati, Ohio 45208
                                        Phone: (513) 381-2333
                                        Fax: (513) 766-9011
                                        *jlyon@thelyonfirm.com*

                                        * *Pro hac vice forthcoming*

                                        **Counsel for Plaintiff and the Putative Class**

30